UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JERRY A. DAVIS,
                      Petitioner,

                      **MEMORANDUM & ORDER**

      -against-

                      10 CV 615 **(**RJD**)**

STATE OF NEW YORK,
                      Respondent.
------------------------------------------------------------x
DEARIE, Judge.

       On January 25, 2005, before he died of multiple gunshot wounds, Eric Dunning identified petitioner Jerry Davis to the police as the man who had shot him. Petitioner was apprehended the following day and admitted in written and videotaped statements that he repeatedly shot Dunning. He later moved to suppress those statements as well as the physical and identification evidence, and after the motions were denied he entered a plea of guilty to second degree murder.

       Currently serving 15 years to life on that conviction, petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the ground that his plea was not knowingly and intelligently made. He claims that he did not understand, at the time he entered his plea, that the sentence of 15 years to life that was promised in exchange for his plea was to run consecutive to, rather than concurrent with, the unfinished parole portion of a sentence for a previous conviction.

       For the reasons set forth below, the application is denied and the petition is dismissed.

## BACKGROUND

**A.**      **Petitioner's Plea**

       On January 3, 2007, petitioner, accompanied by counsel, entered a plea of guilty before the Honorable Randall Eng in the Supreme Court, Queens County. The court inquired (i)

whether petitioner had "talked with [his attorney] about the case and the guilty plea," (ii) whether "it [was] [petitioner's] wish to plead guilty to murder in the second degree," and (iii) whether "[petitioner was] entering this guilty plea freely and voluntarily." Transcript of Plea Proceeding, Jan. 3 & 4, 2007 ("Plea Tr.") at 3-4. Petitioner's response to each question was "yes." Plea Tr. at 3-4. The court also recited each of the rights that petitioner would be waiving with his plea of guilty, asked if he understood, and petitioner again responded "yes." Plea Tr. at 4-5.

Petitioner allocuted as follows:

COURT: I am going to review with you now the charges contained under the first count. That count charges you with murder in the second degree . . . as follows . . . you the defendant, on or about January 25, 2005, in the County of Queens with the intent to cause the death of Eric Dunning. . . [c]aused the death of Eric Dunning by shooting him with a pistol. Is it true that this happened on January 25, 2005?

PET.: Yes.

. . .

COURT: And what time of the day or night approximately did this happen?

. . .

PET.: 5:30 in the afternoon.

COURT: At that time and place did you shoot this man with a pistol?

PET.: Yes.

COURT: What kind of pistol did you use?

PET.: A semi-automatic.

. . .

COURT: Tell me in your own words how you shot this person at that time and place.

PET.: I just raised the weapon and squeezed the trigger.

. . .

COURT: How many times did you shoot this man with this pistol?

| | | |
|---|---|---|
| PET.: | I just squeezed it until it was empty… | |
| COURT: | Is [it] your belief that it was approximately 10[shots]? | |
| PET.: | Yes. | |

. . .

| | | |
|---|---|---|
| COURT: | When you shot this man that many times with the pistol did you intend to cause his death? | |
| PET.: | Yes. | |

Plea Tr. at 5-7.

On the subject of petitioner's sentence, the prosecutor stated: "the People's position regarding sentence would be that we will recommend a sentence of 20 to life in this case." The court, however, addressing petitioner, stated: "Now, Mr. Davis I have been in conference all morning with your attorney and with the ADA. It appears from your criminal history that you might be in law a persistent violent felony offender. However, in light of all the foregoing the Court has made a commitment to sentence you on the sentence date under the first count to a term of 15 years to life." Plea Tr. at 8-9.

Petitioner and the court also engaged in this exchange:

| | | |
|---|---|---|
| COURT: | Has anyone promised anything else to get you to enter this guilty plea? | |
| PET.: | No. | |
| COURT: | Has anyone threatened you or pressured you to enter this plea? | |
| PET.: | No. | |
| COURT: | Are you guilty of this crime that is the intentional murder of Eric Dunning as you just told the Court under oath? | |
| PET.: | Yes. | |

Plea Tr. at 9.

The next day, however, the court recalled the case. The following colloquy ensued:

COURT: First, the Court made specific references to the plea that was entered yesterday, January the 3rd of 2007, and the Court of course is standing by the commitment being made as to sentence.

However, in processing the plea the Court has been informed that [petitioner] may still have an unfinished sentence, that is[,] that he may be in a parole status. Do you have any information regarding this?

ADA: Yes, it's the People[']s understanding that [petitioner] is on parole until the year 2008. And certainly the People in joining in this disposition contemplated that the sentence of 15 to life would be consecutive to any undischarged sentence of imprisonment that would include parole. I will ask the Court to so advise [petitioner].

COURT: [Defense counsel,] have you had an opportunity to confer with [petitioner] privately about this?

COUNSEL: Yes. . .

COURT: And Mr. Davis, I want to make this clear in your mind that in taking the plea the Court has agreed to give you the minimum sentence under the law under your guilty plea to murder in the second degree.

And it was always this Court[']s understanding that this sentence should be consecutive to any unfinished sentence that you may have. And is this clear to you Mr. Davis that when the Court pronounces sentence it will be consecutive to any unfinished sentence that you may have outstanding. Is that your understanding Mr. Davis?

PET.: Yes.

COURT: Now with that understanding the Court again reconfirms its commitment and that is on the sentence date the Court will sentence you Mr. Davis to a term of 15 years to life.

Once again the minimum that the Court can impose under this plea and that it shall be consecutive to any undischarged sentence. Once again, Mr. Davis, understood?

PET.: Yes.

Plea Tr. at 14-15.

4

B.  **Post-Plea Litigation**

Before he was sentenced, petitioner moved in the trial court to withdraw his plea on several grounds, including that he was not fully aware of the consequences of his plea at the time he made it, and that the court changed the initial terms of the plea agreement without his consent. The court denied the motion in a seven-page written decision dated February 1, 2007. People v. Davis, Ind. 1048/05, Mem. Dec. (Sup. Ct. Queens Co. Feb. 1, 2007) (Eng, J.).

Summarizing the relevant events, the trial court's decision states:

> After the plea had been taken, the parties and the Court realized that the defendant still had an undischarged sentence of imprisonment, owing to a violation of his parole which was to have run until 2008. Therefore, the defendant was brought back to Court on January 4, 2007, and was advised by this Court that the sentence of 15 years to [l]ife under this indictment would be consecutive to any outstanding undischarged sentence. The defendant stated that he understood the conditions of the plea and the promised sentence.

Davis, Mem. Dec. at 1-2.

The trial court squarely rejected petitioner's claim that he did not understand the consequences of his plea, finding that the assertion was "wholly conclusory in nature," "reflective of nothing more than 'boilerplate' language typical of motions seeking to withdraw pleas," and "belied by the on-the-record statements made by the defendant during his allocution and plea." Id. at 3. The court also rejected petitioner's specific contention "regarding his lack of consent and/or knowledge that the plea promise was predicated upon the sentence under this indictment running consecutive to any other undischarged sentence," finding that it was "unequivocally contradicted" by the colloquy that occurred when petitioner was brought back to court on January 4. Id. at 4. Reciting that colloquy in full, the trial court found that, "[a]s the record clearly demonstrates, [petitioner] was aware of the exact nature of the promise and the

5

manner in which the sentence was to be imposed, that is, consecutive to any other outstanding and undischarged sentence." Id. at 6.

On his direct appeal, petitioner made a similar challenge to his plea; the Appellate Division rejected the issue as a matter of fact and law. People v. Davis, 56 A.D.3d 794 (2d Dep't 2008), lv. app. denied, 12 N.Y.3d 782 (2009). The Appellate Division found that on January 3, when petitioner entered his plea of guilty, "he was still subject to an undischarged term of imprisonment for a previous conviction" and that, at that time, "[t]he Supreme Court made no representation as to whether the promised sentence in this case would run concurrently with or consecutively to that term." Davis, 56 A.D.3d at 794-95. The appellate court further found that, the following day, "the court clarified the sentencing promise, informing the defendant that it had always intended to order the promised sentence to run consecutively to the undischarged term," and "after consultation with his attorney, the defendant affirmed that his understanding of the sentencing promise had been the same as the court's." Id. at 795.

The Appellate Division also found that the trial court "neither expressly nor impliedly promised that his sentence would run concurrently with his undischarged term," and held, therefore, that "the defendant was sentenced in full accordance with the plea agreement." Id. The appellate court further held that "the defendant's allegation that the court unilaterally changed the sentencing promise . . . is either unsubstantiated or belied by his statements during the plea proceedings," and that the trial court "providently exercised its discretion in denying, without a hearing, the defendant's motion to withdraw his plea of guilty." Id.

# DISCUSSION

**A.      General Habeas Standards**

To obtain relief under the Antiterrorism and Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner whose claim has been "adjudicated on the merits" in state court must show that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This is a formidable hurdle. See, e.g., Bobby v. Dixon, 565 U.S. __, 132 S. Ct. 26 (2011) (per curiam); Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855 (2010). As the Court stated in Renico, in a summary of its fifteen years of AEDPA jurisprudence:

> We have explained that an *unreasonable* application of federal law is different from an *incorrect* application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

130 S. Ct. at 1862 (all internal quotations and citations omitted) (emphases in original). The Court's post-Renico, *per curiam* distillation of the habeas standard is even more emphatic: "a state prisoner seeking a writ of habeas corpus from a federal court must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Bobby, 565 U.S. at __, 132 S. Ct. at 27 (internal quotation and citation omitted).

Alternatively, a petitioner may obtain relief if he can show that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in

7

the State court proceeding." 28 U.S.C. § 2254(d)(2). Also applicable when the state court's factual findings are contested is section 2254(e)(1), which provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

**B.    Analysis.**

   **1.    As a Factual Challenge under 2254(d)(2) and (e)(1)**

In insisting that he did not appreciate, at the time he entered his plea, that the promised sentence would run consecutive to the undischarged parole portion of his previous sentence, petitioner is making an essentially factual challenge to the findings of the trial court and the Appellate Division. This is not a viable path toward habeas relief because petitioner has not offered *any* evidence, much less the requisite "clear and convincing" quantum, to rebut the presumed correctness of the state court finding that "his understanding of the sentencing promise had been the same as the court's." Davis, 56 A.D.3d at 795. The plea proceeding transcript quoted above speaks for itself and flatly defeats petitioner's claim. For these same reasons, petitioner likewise fails to show that the Appellate Division (or underlying trial court decision) is "based on an unreasonable determination of the facts in light of the evidence presented" within the meaning of section 2254(d)(2).[1]

---

[1] Neither the Supreme Court nor the Second Circuit has resolved whether the "unreasonableness" test of 2254(d)(2) and the "clear and convincing evidence" requirement of 2254(e)(1) embody materially different considerations. See Jones v. Murphy, 694 F. 3d 225, 238 n.4 (2d Cir. 2012) (citing Wood v. Allen, 130 S. Ct. 841, 848-49 (2010) (declining to reach question)), cert. denied, __ S. Ct.__, 2013 WL 598 598 (U.S. Feb. 19, 2013). As the discussion above reflects, the Court need not make that determination in order to adjudicate this petition.

## 2. As a Legal Challenge Under 2254(d)(1)

In addition, petitioner certainly has not shown that the state court's rejection of his motion to vacate his plea was contrary to or an unreasonable application of clearly established Supreme Court law.

"The threshold question . . . is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." Williams v. Taylor, 529 U.S. 362, 390 (2000). The Supreme Court has held that a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). A plea is considered voluntary and intelligent if the defendant enters the plea "fully aware of the direct consequences" of the plea. Brady v. United States, 397 U.S. 742, 755 (1970) (internal quotation and citation omitted). See also Padilla v. Kentucky, 559 U.S. 356, __, 130 S. Ct. 1473, 1493 (2010) (guilty plea must "embody a voluntary and intelligent decision to forsake constitutional rights").

As the Second Circuit recognized, however, as of 2005, "[t]he Supreme Court ha[d] not defined which consequences of a guilty plea are 'direct' and therefore must be disclosed to the defendant [in order for the plea to be valid], and which consequences are collateral and need not be conveyed to the defendant." Wilson v. McGinnis, 413 F.3d 196, 199 (2d Cir. 2005). The Circuit reiterated this view on the state of the law in 2010. See Pignataro v. Poole, 381 Fed. App'x 46, 49 (2d Cir. 2010) (quoting Wilson), cert. denied, __ U.S __, 131 S. Ct. 1006 (Jan. 18, 2011). Although Padilla 130 S. Ct. at 1487 et seq., and last month's decision in Chaidez v. United States, __ S. Ct.__, 2013 WL 610201 (Feb. 20, 2013), address the distinction between "direct" and "collateral" in the context of the consequence of deportation and counsel's obligation under the Sixth Amendment, neither they, nor any Supreme Court case of which this

9

Court is aware, address a defendant's right, if any, to know whether a sentence promised as part of a plea bargain will run concurrent to or consecutive with any undischarged prior sentence.

Petitioner, therefore, cannot show that the state court decision was "contrary to" or an "unreasonable application" of Supreme Court law within the meaning of AEDPA.  See Wright v. Van Patten, 552 U.S. 120, 126 (2008) (when "[Supreme Court] cases give no clear answer to the question presented, let alone one in [a habeas petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law")  (internal quotations, citations and alterations omitted); Lolisco v. Goord, 263 F.3d 178, 191 (2d Cir. 2001) ("Petitioner fails to show that [state's] adjudication of his claim was contrary to or involved an unreasonable application of clearly established Supreme Court precedent because he fails to identify a clearly established Supreme Court precedent that bears on his claim" that trial court's post-verdict inquiry into source of extrajudicial information denied him due process).

In any event, even treating the general standards for guilty pleas set forth in Brady and Alford as the clearly established law for section 2254(d) purposes, petitioner's claim fails.  The minutes of his plea proceeding speak for themselves; in concluding on the basis of that transcript that petitioner's plea was knowing, voluntary and intelligent, the Appellate Division did not unreasonably apply Supreme Court standards.  See also Wilson, 413 F.3d at 199 (the fact that a sentence imposed as part of plea agreement may run consecutive to a previous sentence "is not a direct consequence" because, while the fact of consecutiveness may affect a defendant's overall time in custody, it "does not lengthen the [ ] sentence [imposed pursuant to the plea] or directly affect it in any other way;" failure to disclose fact of consecutiveness not a basis for granting habeas relief).

## CONCLUSION

Petitioner Jerry Davis's application for a writ of habeas corpus under 28 U.S.C. §2254 is denied and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
March 4, 2013

/S/ JUDGE RAYMOND J. DEARIE
_____
RAYMOND J. DEARIE
United States District Judge